# **AFFIDAVIT**

I, Grace Bodker, being duly sworn, depose and state that:

## INTRODUCTION

1. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) since September 2023. I am assigned to the Columbus, Ohio Field Office as a member of the Crime Gun Enforcement Team (CGET) Task Force. As part of my duties as an ATF Special Agent, I investigate criminal violations relating to federal firearms offenses, including the unlawful possession of firearms and ammunition by individuals who have been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year. I have participated in numerous investigations of criminal violations relating to illegal firearms possession, firearms trafficking and shooting investigations. I am familiar with, and have utilized multiple investigative methods, including electronic surveillance, visual surveillance, search warrants, and the utilization of GPS/E-911 data.

2. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States. As result of my training and experience, I am familiar with federal laws including 18 U.S.C. § 922(o) which prohibits the possession and transfer of machine guns.

3. This affidavit is being submitted for the purpose of establishing probable cause that Joshua Paul Givens (hereinafter referred to as "GIVENS"), has conspired with another person to commit a violation against the United States - illegal possession/transfer of machine guns, in violation of Title 18, United States Code (U.S.C.) § 922(o), all in violation of Title 18 U.S.C. § 371. I am aware, based on my experience and training, that 26 U.S.C. § 5845(b) defines machine gun to include a Machine Gun Conversion Device (MCD).

4. The facts in this affidavit come from my personal observations, training and experience, as well as information obtained from other agents, officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## FACTUAL BASIS

5. In late 2025, ATF Columbus began investigating GIVENS, an individual believed to be involved in the possession and shipment of Machine Gun Conversion Devices (MCDs), in the Southern District of Ohio and elsewhere. In the course of this investigation, ATF investigators have reviewed GIVENS' social media and confirmed that GIVENS has images and messages confirming GIVENS' involvement with MCDs. See below pictures of images, screenshots and messages that investigators located on GIVENS' social media account.







6. On or about December 16, 2025, an ATF Special Agent, acting in an undercover capacity and hereinafter referred to as the UC, and an ATF Cooperating Source, hereinafter referred to as CS, coordinated an undercover MCD transaction with an individual believed to be GIVENS. In September 2025, GIVENS communicated with the CS via Telegram and agreed to purchase 250 MCDs for approximately $3000. On or about September 28, 2025, GIVENS sent the CS approximately $3000 via CashApp for the purchase of the 250 MCDs. Law enforcement has confirmed via statements from the CS, and Telegram messages between GIVENS and the CS, that this payment from GIVENS to the CS occurred. Due to law enforcement seizures of packages containing MCDs, the CS and GIVENS agreed in Telegram messages to delay the delivery of the 250 MCDs to GIVENS. Prior to this date, GIVENS had made numerous purchases of MCDs from the CS.

UC and the CS on December 16, 2025, was actually an individual identified for purposes of this affidavit as TARGET A. TARGET A corresponded with the UC and CS via assigned call number (380) 287-9732 about acquiring the 250 MCDs. The CS informed TARGET A that the UC was his "cousin". TARGET A inquired about the date, time, and location to meet the UC to receive the package of MCDs.

8. On or about December 17, 2025, the UC and TARGET A agreed as to the location and time to conduct the transaction. On the same date, at approximately 12:08 pm, TARGET A drove to 7323 State Route 37 E, Sunbury, Ohio, to meet the UC for the purpose of receiving 250 "incognito" MCDs (75 black, 50 red, 50 gold, 50 blue, and 25 silver). TARGET A arrived and parked within the vicinity of the UC vehicle. From the same number that the prior phone communications occurred, TARGET A texted the UC to confirm he could walk over and enter the Undercover Vehicle (UCV). The UC confirmed with TARGET A that he (TARGET A) could enter the UCV and TARGET A walked over to the UCV and entered the front passenger seat. The UC and TARGET A exchanged greetings. The UC presented TARGET A with a box containing 80 exterior button MCD's. TARGET A took possession of the box. The UC advised TARGET A that he also had the pre-agreed upon 250 "incognito" MCD's for TARGET A in the vehicle but that according to the CS, he/she also wanted the buyer to have these 80 exterior button MCD's complimentary due to how long it had taken from the payment for the 250 "incognito" MCD's to receipt of the MCD's. TARGET A accepted the additional 80 MCDs, and took possession of them. The UC then asked TARGET A if he (TARGET A) wanted a separate bag to place all of the switches, the 80 and the additional 250 MCDs that the UC referenced, to which TARGET A confirmed in the affirmative with the UC. The UC then initiated a pre-planned bust signal, and the ATF arrest team placed TARGET A in custody.

9. Following his arrest, officers advised TARGET A of his Miranda rights, and TARGET A voluntarily agreed to be interviewed. During the interview, TARGET A stated that GIVENS advised him that he (GIVENS) was "picking up like 100 switches" and would pay TARGET A $500 if TARGET A would pick up the switches for him. TARGET A agreed to pick up the switches and GIVENS, as agreed, sent TARGET A $500 via Cashapp prior to picking up the 250 switches. GIVENS then provided TARGET A with the contact information for the CS and TARGET A reached out to the CS to confirm the details of the transaction. Based on my experience and training, I am aware that "switch" is a common street term for an MCD. During the interview, TARGET A explained that he knew that a "switch" converts a firearm from semi-automatic to fully automatic. Once TARGET A received the "switches", TARGET A was to call GIVENS and receive instructions on how to deliver the "switches" to GIVENS. Following the transaction, TARGET A attempted to reach GIVENS by Instagram, but GIVENS did not answer.

*[continued on next page]*

CONCLUSION

11. Based upon the above listed facts and circumstances, affiant asserts that there is probable cause to believe that beginning on at least, and continuing until on or about December 17, 2025, in the Southern District of Ohio, and elsewhere, GIVENS did knowingly and willfully conspire with TARGET A to commit the following offense against the United States, to knowingly possess a machine gun as prohibited by 18 U.S.C. § 922(o), all in violation of 18 U.S.C. § 371.

*Grace Bodker*
Grace Bodker
ATF Special Agent

Sworn to and subscribed before me this __19th__ day of December 2025, in Columbus, Ohio.

_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE